UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER P. GRABER,

                    Plaintiff,

          -v-                         5:24-CV-470

CAYUGA HOME FOR CHILDREN
d/b/a CAYUGA CENTERS and EDWARD
HAYES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

HARDING MAZZOTTI, LLP           KELLY A. MAGNUSON, ESQ.
Attorneys for Plaintiff
P.O. Box 15141
1 Wall Street
Albany, NY 12212

BOND, SCHOENECK & KING, PLLC    JEREMY M. SHER, ESQ.
Attorneys for Defendants
350 Linden Oaks, Third Floor
Rochester, NY 14625

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On April 3, 2024, plaintiff Christopher P. Graber ("Mr. Graber" or

"plaintiff") filed a civil lawsuit against defendants Cayuga Home for

Children, doing business as the Cayuga Centers ("Cayuga") and its Chief

Executive Officer ("CEO") Edward Hayes ("Hayes") (collectively,

"defendants") for unlawful employment practices.[1]  Dkt. No. 1.

Plaintiff's two-count amended complaint asserts claims for retaliation and

constructive termination under both Title VII and the New York State

Human Rights Law (the "NYSHRL").  Dkt. No. 12.  According to plaintiff,

defendants retaliated against him and forced him out of the company after

his wife, a fellow Cayuga employee, participated in an age discrimination

internal investigation against Hayes.  *Id.*

On July 26, 2024, defendants moved pursuant to Rule 12(b)(6) to dismiss

Mr. Graber's amended complaint.  Dkt. No. 14.  That motion has been

briefed, Dkt. Nos. 17–18, and will be considered on the basis of the

submissions and without oral argument.

## II.  <u>BACKGROUND</u>

This case arises out of an internal investigation conducted by Cayuga

against its acting CEO, Hayes, for alleged age discrimination against another

employee.  Am. Compl. ¶ 1.

---

[1]  Thereafter, Mr. Graber amended his complaint as of right on July 5, 2024.  Dkt. No. 12.
Defendants had previously moved against plaintiff's original pleading under Federal Rules of Civil
Procedure ("Rule") 12(b)(6).  Dkt. No. 9.  That motion was denied as moot upon the filing of plaintiff's
amended pleading.  Dkt. No. 13.

Cayuga is a not-for-profit organization located in Auburn, New York.  Am. Compl. ¶ 10.  Cayuga hired Mr. Graber to work as a project manager on January 12, 2017.  *Id.* ¶ 12.

During Mr. Graber's tenure at Cayuga, he was met with consistent positive performance reviews.  Am. Compl. ¶ 12.  Plaintiff was also promoted several times.  *Id.*  At the time of his alleged constructive termination, plaintiff served as the Corporate Operations Deputy.  *Id.*

Mr. Graber's wife, Kathryn Nolan Graber ("Mrs. Graber") also worked for Cayuga as the Vice President of Human Resources ("HR").  Am. Compl. ¶ 13. In February 2023, Cayuga's Chief Operating Officer, Anne Sheedy ("Sheedy") complained of age discrimination by fellow C-Suite employee, Hayes.  *Id.* ¶ 16.  In response, the law firm Bond, Schoeneck, and King PLLP ("BSK") was hired to investigate Sheedy's complaint.  *Id.* ¶ 18.  Hayes was placed on administrative leave for the pendency of the internal investigation.  *Id.*

As part of their investigation, BSK interviewed Mrs. Graber.  Am. Compl. ¶ 19.  At the outset of the interview, Mrs. Graber informed the BSK attorneys that she was "extremely concerned" that her participation in the investigation would lead to retaliatory actions against herself, Mr. Graber, or both.  *Id.* ¶ 19.  The BSK attorneys assured Mrs. Graber that her participation in the investigation was legally protected activity and that she was required to cooperate.  *Id.*  Mrs. Graber proceeded with the interview, as

instructed, and divulged communications between herself and Hayes that supported the veracity of Sheedy's complaint. *Id.*

In March, BSK declared that Sheedy's age discrimination complaint was "unsubstantiated." Am. Compl. ¶ 20. Sheedy remained employed at Cayuga as did Mrs. Graber and Hayes. *Id.* Following his return from administrative leave, Hayes refused to speak directly with either Mr. of Mrs. Graber. *Id.* ¶ 28. Hayes later sent an email to Chief Financial Officer ("CFO"), Ms. Palin stating that he wanted to consider whether or not to retain Mr. Graber because he was "pricey" for his position on March 15, 2023. *Id.* ¶ 24.

On March 21, 2023, during a remote team meeting, Hayes criticized Mr. Graber, stating: "Chris [Mr. Graber] is sitting here, and in the past has accused me of growing the agency too quickly. I disagree." Am. Compl. ¶ 26. Hayes later commented on a project that plaintiff previously handled, remarking that Cayuga had "shot [themselves] in the foot on Florida Medicaid contracting and licensing." *Id.* At the close of the meeting Hayes stated that he was "expected and waiting for resignations over the next few weeks." *Id.* Plaintiff perceived these remarks to be a personal attack. *Id.*

Believing that she was being retaliated against by Hayes, Mrs. Graber retained an attorney to contact Cayuga's board to voice her concerns. Am. Compl. ¶ 29. Aware that Mrs. Graber had retained counsel, Hayes made disparaging statements about Mr. Graber while he was touring Cayuga's

administrative building in Auburn, New York. *Id.* ¶ 31. Plaintiff was not on site when this occurred. *Id.* Plaintiff was advised that during his tour of the administrative building, Hayes loudly demanded that Mr. Graber's office be moved away from his own. *Id.* Hayes stated that plaintiff was not important in his "universe." *Id.*

On May 11, 2023, Mrs. Graber and Mr. Graber, through their respective counsel, informed Cayuga's Board that they were each being retaliated against. Am. Compl. ¶ 34. Plaintiff and his counsel appeared for a remote interview with BSK attorneys on May 17, 2023. *Id.* ¶ 35.

In June 2023, Hayes asked Mr. Graber's supervisor what the responsibilities were of the three employees who reported to plaintiff. Am. Compl. ¶ 36. Plaintiff's supervisor asked him to confirm via email what the roles and vital nature of his direct reports. *Id.* According to plaintiff, Hayes was investigating whether he could reassign plaintiff's direct reports to make him less valuable at Cayuga. *Id.*

Mr. Graber became overwhelmed with stress stemming from Hayes alleged retaliation at work. Am. Compl. ¶ 37. As a result, plaintiff was forced to take Family Medical Leave Act ("FMLA") leave beginning on June

17, 2023.  *Id.*  Plaintiff ultimately resigned from his position at Cayuga on August 7, 2023.[2]  *Id.* ¶ 38.

On June 19, 2023, Mr. Graber filed a complaint of discrimination in violation of Title VII with the Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶ 5.  Plaintiff received his notice of a right to sue from the EEOC on January 5, 2024.  *Id.* ¶ 7.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be sufficient to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

---

[2] Mr. Graber was able to secure new employment as of December 4, 2023.  *Id.* ¶ 40.  However, this position came with a 72% reduction in pay.  *Id.*

by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.  DISCUSSION

Mr. Graber's amended complaint sets forth claims for constructive discharge, retaliation, and a retaliatory hostile work environment against defendants in violation of Title VII and the NYSHRL.[3]  Am. Compl. 42–61. Defendants have moved to dismiss plaintiff's amended complaint in its entirety.  Defs.' Mem., Dkt. No. 14-1 at 9–10.[4]

### A.  Constructive Discharge

First, Mr. Graber has asserted a claim for constructive discharge in violation of Title VII and the NYSHRL.  Am. Compl. 42–61.

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Knight v. MTA – N.Y.C. Transit*, 2024 WL 4350417, at *24 (E.D.N.Y. Sept. 30, 2024) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)).  As relevant here, working conditions are considered to be "so intolerable" when "they are

---

[3]  In accordance with Title VII, Mr. Graber has asserted his Title VII claims only against defendant Cayuga.  *See, e.g.*, *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219 (N.D.N.Y. 2014) (citation omitted) ("Individuals are not subject to liability under […] Title VII [….]").  The NYSHRL, by contrast, permits for individual liability.

[4]  Pagination corresponds to CM/ECF.

so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quotation omitted).

Defendants argue that plaintiff has not plausibly alleged that a reasonable employee subjected to the same working conditions would have felt compelled to resign. Defs.' Mem. at 9–13. Upon review, this argument will be rejected.

A review of the amended complaint reveals that Mr. Graber's relationship with Cayuga's CEO, Hayes deteriorated after Mrs. Graber's involvement in the Sheedy investigation. First, Hayes refused to speak with plaintiff at work. Am. Compl. ¶ 28. Next, Hayes made a series of public criticisms of plaintiff during company meetings and in the presence of other employees. *Id.* ¶¶ 26, 31. Plaintiff further alleges that Hayes endeavored to move his office away from his own to highlight how "not important" plaintiff was in Hayes's "universe." *Id.* Hayes also inquired as to the nature of plaintiff's direct reports, questioning whether they were "vital." *Id.* ¶ 36. According to plaintiff, this was an attempt to make him "less valuable" to Cayuga and force him out of his position. *Id.*

At the motion to dismiss stage, these allegations are sufficient to plausibly state a claim for constructive discharge. Therefore, defendants' motion to dismiss Mr. Graber's constructive discharge claim will be denied.

**B. Retaliation**

Next, Mr. Graber has asserted claims for retaliation and retaliatory hostile work environment against defendants under Title VII and the NYSHRL. Am. Compl. ¶¶ 42–61.

In addition to proscribing discrimination by employers, Title VII and the NYSHRL broadly proscribe employers from retaliating against employees for engaging in protected activity. *Phillips v. Fashion Inst. of Tech.*, 2024 WL 1005500, at *2 (2d Cir. Mar. 8, 2024); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. ed 215, 231–32 (E.D.N.Y. 2016) (quotation omitted) (noting that Title VII's anti-retaliation provision "is construed to cover a broad range of employer conduct").

Plaintiffs may pursue retaliation claims under either statute predicated upon one concrete retaliatory action by an employer, or upon a work environment permeated with retaliatory actions, also known as a retaliatory hostile work environment. *Phillips*, 2024 WL 1005500, at *2. The inherent difference between these theories of liability is the manner in which the plaintiff must plead and prove their claim: a standard retaliation claim is predicated upon one, concrete adverse action while retaliatory hostile work environment claims allow the plaintiff to aggregate a series of adverse actions. *See id.*

"[T]o survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action [or actions]—against him, (2) "because" he has opposed any unlawful employment practice."[5]   *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).[6]   As relevant here, a "materially adverse" action is "one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Carr*, 76 F.4th 180 (quoting *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68).

According to Mr. Graber, defendants retaliated against him because of his wife's participation in an internal investigation against Cayuga's CEO, Hayes.  Am. Compl. ¶¶ 42–61.  Plaintiff asserts that defendants retaliated against him, culminating in his constructive discharge from his position with Cayuga.  *Id.*  Defendants argue that Mr. Graber has failed to plausibly allege

---

[5] Though the Second Circuit has not directly addressed whether to apply but-for causation to NYSHRL claims, it has "implicitly applied the but-for standard to NYSHRL claims."  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 333 n.7 (S.D.N.Y. 2020) (collecting cases).

[6] Courts generally analyze Title VII and NYSHRL claims together.  However, in 2019, the New York State Legislature amended the NYSHRL.  While the Court is cognizant of the inherent ambiguity in the changes to the NYSHRL, theories available to plaintiffs under Title VII are generally available under the analogous state law.  *See Lee v. Riverbay Corp.*, –F. Supp. 3d–, 2024 WL 4312166, at *11 (S.D.N.Y. Sept. 27, 2024) (noting that the federal civil rights statute serves as a "floor" below which the state law's protections cannot fall).  Accordingly, the Court will proceed to analyze Mr. Graber's retaliation claims together.

- 10 -

retaliatory intent or causation between the alleged retaliation and adverse action.  Defs.' Mem. at 9–10.

Upon review, Mr. Graber has plausibly alleged a claim for retaliation under Title VII and the NYSHRL.  Plaintiff has plausibly alleged that he engaged in a protected activity that defendants were aware of *vis-à-vis* Mrs. Graber's participation in the Sheedy investigation.[7]  Am. Compl. ¶ 19.

As discussed above, Mr. Graber has asserted two different theories of recovery for defendants' alleged retaliatory actions.  First, plaintiff asserts a claim of retaliation predicated upon his eventual constructive discharge from Cayuga.  As discussed above, plaintiff has plausibly alleged that he was constructively discharged from his position—a materially adverse employment action.  Plaintiff has also plausibly alleged that this adverse action followed Mrs. Graber's involvement in the Sheedy investigation.  Thus,

---

[7]  As relevant here, the plaintiff engages in a protected activity for the purposes of both Title VII and the NYSHRL when he "(1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under [either statute]." *Jacobs v. Hudson Valley Family Phys., PLLC*, –F. Supp. 3d–, 2024 WL 1200002, at *7 (N.D.N.Y. Mar. 20, 2024).  The amended complaint reveals two instances of protected activity: the first, when Mrs. Graber relayed her concerns of retaliation against both her and Mr. Graber in response to her involvement in the Sheedy investigation. Am. Compl. ¶ 19.  The second instance of protected activity took place when Mr. Graber informed Cayuga's board that he believed he was being retaliated against.  *Id.* ¶  However, in plaintiff's opposition papers, he refers only to the first instance. Plaintiff thus wishes the Court to impute Mrs. Graber's protected activity to him.  While this issue was not briefed by the parties, the Court notes that district courts within the Second Circuit have carved out a narrow exception for imputing the protected activity of one spouse to the other.  *See, e.g.*, *Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 347 (N.D.N.Y. 2000).

plaintiff has plausibly alleged that "because of" Mrs. Graber's involvement, he would not have suffered any adverse employment action.

Therefore, plaintiff has plausibly alleged a *prima facie* case of retaliation under Title VII and the NYSHRL. Accordingly, defendants' motion to dismiss plaintiff's retaliation claims will be denied.

Next, Mr. Graber has plausibly alleged that he was subjected to a retaliatory hostile work environment. Unlike plaintiff's retaliation claim predicated upon his constructive discharge, plaintiff's retaliatory hostile work environment claim permits the Court to aggregate the series of materially adverse actions plaintiff was subjected to. *Supra*. Plaintiff alleges, *inter alia*, that Hayes refused to speak directly with him at work, repeatedly scolded him during team meetings, disparaged him to other employees, attempted to physically relocated his office to avoid contact, and attempted to remove his direct reports. Am. Compl. ¶¶ 26–27, 31, 34. Taken together, plaintiff has plausibly alleged that his work environment was permeated with materially adverse actions that would have dissuaded a reasonable similarly situated employee from engaging in protected activity. As discussed, plaintiff has plausibly alleged that the "fuse" was lit once Mrs. Graber participated in the Sheedy investigation.

Thus, plaintiff has plausibly alleged that he was subjected to a work environment permeated with retaliatory actions. Accordingly, defendants'

motion to dismiss Mr. Graber's retaliatory hostile work environment claim will be denied.

## V.  CONCLUSION

In sum, Mr. Graber has plausibly alleged a claim for constructive discharged from his position with Cayuga.  Plaintiff has also plausibly alleged that defendants retaliated against him after his wife participated in an internal investigation against Cayuga's CEO, Hayes.

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss is DENIED; and

2.  Defendants are directed to file and serve an ANSWER to plaintiff's amended complaint on or before December 6, 2024.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  November 22, 2024
            Utica, New York.